| Fill in this information to identify the case: | | |
| --- | --- | --- |
| Debtor 1 | Rosana Condina | aka Rossana Condina |
| Debtor 2 | | |
| United States Bankruptcy Case for the: | District of New Jersey | |
| Case Number | 19-26555-RG | |

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security documents. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| **Part 1:** | **Identify the claim** |
| --- | --- |

**1. Who is the current creditor?**

Ditech Financial LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

[X] No

[ ] Yes    From Whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Ditech Financial LLC F/K/A Green Tree Servicing LLC
Name

PO Box 12740
Number        Street

Tempe                          AZ    85284-0046
City                                State    Zip code

Contact Phone    888-298-7785
Contact E-mail    poc.team@ditech.com

Where should payments to the creditor be sent? (If different)

Ditech Financial LLC F/K/A Green Tree Servicing LLC
Name

PO Box 0049
Number        Street

Palatine                        IL    60055-0049
City                                State    Zip code

Contact Phone    888-298-7785
Contact E-mail    poc.team@ditech.com

Uniform Claim Identifier for Electronic Payments in chapter 13 (if you use one)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**4. Does this claim amend one already filed?**

[X] No

[ ] Yes    Claim number on court claims registry (if known) _____    Filed on _____
MM    / DD    / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

[X] No

[ ] Yes    Who made the earlier filing?

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

[ ] No

[x] Yes    Last 4 digits of the debtor's account or any number you use to identify the debtor:    2601

**7. How much is the claim?**    $409,541.69

Does this amount include interest or other charges?

[ ] No

[x] Yes    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c)(2)(A).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

**9. Is all or part of the claim secured?**

[ ] No

[x] Yes    The claim is secured by a lien on property.

Nature of Property:    1075 Ringwood Avenue, Pompton Lakes, NJ 07442

[x]    Real Estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage proof of claim attachment* (Official Form 410-A) with this *Proof of Claim.*

[ ]    Motor Vehicle

[ ]    Other.    Describe: _____

Basis for Perfection:    **Deed of Trust, Mortgage, Note**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded)

Value of Property: _____

Amount of the claim that is secured:    $409,541.69

Amount of the claim that is unsecured:    $0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $53,554.12

Annual Interest Rate (when case was filed)    4.25000%

[x] Fixed

[ ] Variable

**10. Is this claim based on a lease?**

[x] No

[ ] Yes    **Amount necessary to cure any default as of the date of the petition.** _____

**11. Is this claim subject to a right of setoff?**

[x] No

[ ] Yes    Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 USC § 507(a)?** | [X] No | | |
|---|---|---|---|
| | [ ] Yes | *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some catagorites, the law limits the amount entitled to priority. | [ ] | Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | $ _____ |
| | [ ] | Up to $3,025 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7) | $ _____ |
| | [ ] | Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507 (a)(4) | $ _____ |
| | [ ] | Taxes or penalties owed to governmental units  11 U.S.C. § 507 (a)(8) | $ _____ |
| | [ ] | Contributions to an employee benefit plan. 11 U.S.C. § 507 (a)(5) | $ _____ |
| | [ ] | Other. Specify subsection of 11 U.S.C. § 507 (a)(__) that applies. | $ _____ |
| | * | Amounts are subject to adjustment on 04/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

| | |
|---|---|
| **The person completing this proof of claim must sign and date it.** **FRBP 9011(b).** | **Check the appropriate box:** |
| | [ ] I am the creditor. |
| | [X] I am the creditor's attorney or authorized agent. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | [ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | [ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave me the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim*  and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date    <u>11/5/2019</u>
                    MM  /  DD  / YYYY

<u>/s/ Mary Vitartas</u>
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Mary | | Vitartas |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Title | Authorized Agent for Creditor | | |
| Company | Padgett Law Group | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 6267 Old Water Oak Road, Suite 203 | | |
| | Number    Street | | |
| | Tallahassee | FL | 32312 |
| | City | State | Zip Code |
| Contact Phone | (850)-422-2520 | Email | POCissues@padgettlaw.net |

*The filing of this Proof of Claim does not constitute a waiver of service via Bankruptcy Rule 7004. As such, all parties must comply with Bankruptcy Rule 7004 and any and all applicable rules of procedure, including local rules governing service.*

**Mortgage Proof of Claim Attachment** (12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

### Part 1: Mortgage and Case Information

| | |
|---|---|
| Case Number: | 19-26555-RG |
| Debtor 1: | Rosana Codina |
| Debtor 2: | |
| Last 4 Digits to Identify: | 2601 |
| Creditor: | Ditech Financial LLC |
| Servicer: | Ditech Financial LLC |
| Fixed Accrual/daily Simple Interest/other: | Fixed/Actuarial |

### Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $366,273.47 |
| Interest due: | $19,355.23 |
| Fees and costs due: | $5,698.01 |
| Fees and costs due: (Unsecured) | |
| Escrow deficiency for funds advanced: | $18,213.98 |
| Deferred Principal: | $0.00 |
| Deferred Interest: | $0.00 |
| Forbearance: | $0.00 |
| Less total funds on hand: | - $0.00 |
| Total debt: | $409,541.69 |

### Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | |
| Prepetition fees due: | $5,698.01 |
| Escrow deficiency for funds advanced: * | $18,213.98 |
| Projected escrow shortage: | $4,203.27 |
| Less funds on hand: | $0.00 |
| Total prepetition arrearage: | $53,954.12 |

### Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $1,816.99 |
| Monthly escrow: | $1,230.60 |
| Private mortgage insurance: | $235.98 |
| Insurance - Other: | $0.00 |
| Total monthly Payment: | $3,283.57 |

### Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due date | G. Prin, int & esc past due balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to fees or charges | L. Unapplied Funds | M. Principal Balance | N. Accrued interest Balance | O. Escrow Balance | P. Fees/Charges Balance | Q. Unapplied funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/1/2018 | 3,156.03 | - | - | Contractual Payment | 4/1/2018 | 3,156.03 | | | | | - | 367,819.98 | | 3,563.40 | 72.68 | 1,816.99 |
| 4/1/2018 | | - | 240.14 | Escrow Disb | 4/1/2018 | 3,156.03 | | | | | - | 367,819.98 | | 3,323.26 | 72.68 | 1,816.99 |
| 4/16/2018 | | 1,600.00 | | Payment | 4/1/2018 | 3,156.03 | | | | | 1,600.00 | 367,819.98 | | 3,323.26 | 72.68 | 1,600.00 |
| 4/16/2018 | | | 72.68 | Late Fee | 4/1/2018 | 3,156.03 | | | | | - | 367,819.98 | | 3,323.26 | 72.68 | 1,600.00 |
| 4/20/2018 | | - | 3,030.00 | Escrow Disb | 4/1/2018 | 6,312.06 | | | | | - | 367,819.98 | | 293.26 | 72.68 | 1,600.00 |
| 5/1/2018 | 3,156.03 | - | - | Contractual Payment | 5/1/2018 | 6,312.06 | | | | | - | 367,819.98 | | 293.26 | 72.68 | 1,600.00 |
| 5/1/2018 | | 43.97 | | Payment | 5/1/2018 | 6,312.06 | | | | | 43.97 | 367,819.98 | | 293.26 | 72.68 | 1,643.97 |
| 5/3/2018 | | (3,156.03) | | Payment | 5/1/2018 | 6,312.06 | | | | | (3,156.03) | 367,819.98 | | 293.26 | 72.68 | (1,512.06) |
| 5/3/2018 | | 1,600.00 | | Payment | 5/1/2018 | 6,312.06 | 514.29 | 1,302.70 | 1,339.04 | | 1,600.00 | 367,305.69 | | 1,632.30 | 72.68 | 87.94 |
| 5/3/2018 | | 3,156.03 | | Payment | 5/1/2018 | 3,156.03 | | | | | 1,600.00 | 367,305.69 | | 1,392.16 | 72.68 | 87.94 |
| 5/4/2018 | | - | 240.14 | Escrow Disb | 5/1/2018 | 3,156.03 | | | | | - | 367,305.69 | | 1,392.16 | 72.68 | 87.94 |
| 5/14/2018 | | 1,000.00 | | Payment | 5/1/2018 | 3,156.03 | | | | | 1,000.00 | 367,305.69 | | 1,392.16 | 72.68 | 1,087.94 |
| 5/29/2018 | | 1,500.00 | | Payment | 5/1/2018 | 3,156.03 | | | | | 1,500.00 | 367,305.69 | | 1,392.16 | 72.68 | 2,587.94 |
| 6/1/2018 | 3,156.03 | - | | Contractual Payment | 5/1/2018 | 6,312.06 | | | | | - | 367,305.69 | | 1,392.16 | 72.68 | 2,587.94 |
| 6/4/2018 | | - | 240.14 | Escrow Disb | 5/1/2018 | 6,312.06 | | | | | - | 367,305.69 | | 1,152.02 | 72.68 | 2,587.94 |
| 6/14/2018 | | (3,156.03) | | Payment | 5/1/2018 | 6,312.06 | | | | | (3,156.03) | 367,305.69 | | 1,152.02 | 72.68 | (568.09) |
| 6/14/2018 | | 3,156.03 | | Payment | 5/1/2018 | 3,156.03 | 516.12 | 1,300.87 | 1,339.04 | | (3,156.03) | 366,789.57 | | 2,491.06 | 72.68 | (568.09) |
| 6/14/2018 | | 635.00 | | Payment | 6/1/2018 | 3,156.03 | | | | | 635.00 | 366,789.57 | | 2,491.06 | 72.68 | 66.91 |
| 6/22/2018 | | 1,550.00 | | Payment | 6/1/2018 | 3,156.03 | | | | | 1,550.00 | 366,789.57 | | 2,491.06 | 72.68 | 1,616.91 |
| 7/1/2018 | 1,816.99 | - | | Contractual Payment | 6/1/2018 | 4,973.02 | | | | | - | 366,789.57 | | 2,491.06 | 72.68 | 1,616.91 |
| 7/6/2018 | | - | 240.14 | Escrow Disb | 6/1/2018 | 4,973.02 | | | | | - | 366,789.57 | | 2,250.92 | 72.68 | 1,616.91 |
| 7/10/2018 | | (3,156.03) | | Payment | 6/1/2018 | 4,973.02 | | | | | (3,156.03) | 366,789.57 | | 2,250.92 | 72.68 | (1,539.12) |
| 7/10/2018 | | 3,156.03 | | Payment | 6/1/2018 | 1,816.99 | 517.94 | 1,299.05 | 1,339.04 | | 1,600.00 | 366,271.63 | | 3,589.96 | 72.68 | 60.88 |
| 7/10/2018 | | 1,600.00 | | Payment | 7/1/2018 | 1,816.99 | | | | | 1,600.00 | 366,271.63 | | 3,589.96 | 72.68 | 60.88 |
| 7/17/2018 | | (1,600.00) | | NSF Reversal | 7/1/2018 | 1,816.99 | (517.94) | (1,299.05) | (1,339.04) | | 1,556.03 | 366,789.57 | | 3,589.96 | 72.68 | (1,539.12) |
| 7/17/2018 | | | 72.68 | Late Fee | 7/1/2018 | 4,973.02 | | | | | - | 366,789.57 | | 2,250.92 | 145.36 | 1,616.91 |
| 7/31/2018 | | (3,156.03) | | Payment | 6/1/2018 | 4,973.02 | | | | | (3,156.03) | 366,789.57 | | 2,250.92 | 145.36 | (1,539.12) |
| 7/31/2018 | | 1,600.00 | | Payment | 6/1/2018 | 4,973.02 | | | | | 1,600.00 | 366,271.63 | | 3,589.96 | 145.36 | 60.88 |
| 7/31/2018 | | 3,156.03 | | Payment | 6/1/2018 | 1,816.99 | 517.94 | 1,299.05 | 1,339.04 | | (3,156.03) | 366,271.63 | | 3,589.96 | 145.36 | 60.88 |
| 7/31/2018 | 1,816.99 | - | | Contractual Payment | 7/1/2018 | 3,633.98 | | | | | 1,600.00 | 366,271.63 | | 3,589.96 | 145.36 | 60.88 |
| 8/1/2018 | | - | 240.14 | Escrow Disb | 7/1/2018 | 3,633.98 | | | | | - | 366,271.63 | | 3,349.82 | 145.36 | 60.88 |
| 8/14/2018 | | - | 3,722.33 | Escrow Disb | 7/1/2018 | 3,633.98 | | | | | - | 366,271.63 | | (372.51) | 145.36 | 60.88 |
| 8/15/2018 | | 1,200.00 | | Payment | 7/1/2018 | 3,633.98 | | | | | 1,200.00 | 366,271.63 | | (372.51) | 145.36 | 1,260.88 |
| 8/16/2018 | | | 72.68 | Late Fee | 7/1/2018 | 3,633.98 | | | | | - | 366,271.63 | | (372.51) | 218.04 | 1,260.88 |
| 8/25/2018 | | (3,156.03) | | Payment | 7/1/2018 | 3,633.98 | | | | | (3,156.03) | 366,271.63 | | (372.51) | 218.04 | (1,895.15) |
| 8/25/2018 | | 3,156.03 | | Payment | 7/1/2018 | 519.78 | 1,297.21 | 1,339.04 | | | 1,200.00 | 365,751.85 | | 966.53 | 218.04 | (655.15) |
| 8/25/2018 | | 1,200.00 | | Payment | 8/1/2018 | 3,633.98 | | | | | 1,200.00 | 365,751.85 | | 966.53 | 218.04 | 1,260.88 |
| 8/25/2018 | | 2,000.00 | | Payment | 8/1/2018 | 3,633.98 | | | | | 2,000.00 | 365,751.85 | | 966.53 | 218.04 | 1,260.88 |
| 8/25/2018 | | (1,200.00) | | Reverse/Reapply | 8/1/2018 | 477.95 | | | | | (1,200.00) | 365,751.85 | | 966.53 | 218.04 | 104.85 |

| Date | Amount | Description | Date | | | | | | Balance | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/1/2018 | | Contractual Payment | 8/1/2018 | 2,294.94 | | (1,339.04) | | 1,156.03 | 365,751.85 | 104.85 |
| 9/5/2018 | (2,000.00) | NSF Reversal | 7/1/2018 | 5,450.97 | (1,297.21) | | | | 366,271.63 | 1,260.88 |
| 9/5/2018 | 240.14 | Escrow Disb | 7/1/2018 | 5,450.97 | | | | | 366,271.63 | 1,260.88 |
| 9/7/2018 | 72.88 | Escrow Disb | 7/1/2018 | 7,267.96 | | | | | 366,271.63 | 1,260.88 |
| 10/1/2018 | 1,816.99 | Contractual Payment | 7/1/2018 | 7,267.96 | | | | | 366,271.63 | 1,260.88 |
| 10/5/2018 | 240.14 | Escrow Disb | 7/1/2018 | 7,267.96 | | | | | 366,271.63 | 1,260.88 |
| 10/16/2018 | 72.68 | Late Fee | 7/1/2018 | 7,267.96 | | | | | 366,271.63 | 1,260.88 |
| 10/23/2018 | 3,722.00 | Escrow Disb | 7/1/2018 | 7,267.96 | | | | | 366,271.63 | 1,260.88 |
| 10/25/2018 | 1,023.00 | Escrow Disb | 7/1/2018 | 7,267.96 | | | | | 366,271.63 | 1,260.88 |
| 10/26/2018 | (3,156.03) | Payment | 7/1/2018 | 7,267.96 | | | | (3,156.03) | 366,271.63 | (1,895.15) |
| 10/30/2018 | 3,156.03 | Payment | 8/1/2018 | 4,111.93 | 519.78 | | 1,339.04 | 2,000.00 | 365,751.85 | 104.85 |
| 10/30/2018 | 2,000.00 | Payment | 8/1/2018 | 4,111.93 | | | | 1,500.00 | 365,751.85 | 1,604.85 |
| 10/30/2018 | 1,500.00 | Payment | 8/1/2018 | 4,111.93 | | | | | 365,751.85 | 1,604.85 |
| 11/1/2018 | | Contractual Payment | 8/1/2018 | 5,928.92 | | | | | 365,751.85 | 2,760.88 |
| 11/5/2018 | 1,816.99 | Escrow Disb | 8/1/2018 | 9,084.95 | | | | 1,156.03 | 366,273.47 | 4,416.91 |
| 11/6/2018 | (2,000.00) | NSF Reversal | 7/1/2018 | 9,084.95 | (519.78) | (1,339.04) | | | 366,791.41 | 363.40 |
| 11/8/2018 | (1,500.00) | NSF Reversal | 6/1/2018 | 12,240.98 | (519.78) | (1,339.04) | | 1,656.03 | 366,273.47 | 363.40 |
| 11/9/2018 | 240.14 | UAF Disb | 7/1/2018 | 9,084.95 | 517.94 | 1,339.04 | | (3,156.03) | 366,273.47 | 363.40 |
| 11/22/2018 | 290.00 | Attorney Fee | 7/1/2018 | 9,084.95 | 1,299.05 | | | | 366,273.47 | 653.40 |
| 12/1/2018 | | Contractual Payment | 7/1/2018 | 10,901.94 | | | | | 366,273.47 | 653.40 |
| 12/3/2018 | 1,800.00 | Payment | 7/1/2018 | 10,901.94 | | | | 1,800.00 | 366,273.47 | 3,060.88 |
| 12/4/2018 | 0.47 | Service Costs | 7/1/2018 | 10,901.94 | | | | | 366,273.47 | 3,060.88 |
| 12/4/2018 | 0.47 | Service Costs | 7/1/2018 | 10,901.94 | | | | | 366,273.47 | 3,060.88 |
| 12/5/2018 | 240.14 | Escrow Disb | 7/1/2018 | 10,901.94 | | | | | 366,273.47 | 3,060.88 |
| 12/17/2018 | 72.68 | Late Fee | 7/1/2018 | 12,718.93 | | | | | 366,273.47 | 4,460.88 |
| 12/24/2018 | 1,600.00 | Payment | 7/1/2018 | 12,718.93 | | | | 1,600.00 | 366,273.47 | 6,260.88 |
| 12/24/2018 | 1,600.00 | Payment | 7/1/2018 | 12,718.93 | | | | 1,600.00 | 366,273.47 | 6,260.88 |
| 1/1/2019 | | Contractual Payment | 7/1/2018 | 12,718.93 | | | | | 366,273.47 | 6,260.88 |
| 1/4/2019 | 235.98 | Escrow Disb | 7/1/2018 | 14,535.92 | | | | | 366,273.47 | 6,260.88 |
| 1/10/2019 | 84.00 | Recording Costs | 7/1/2018 | 14,535.92 | | | | | 366,273.47 | 6,260.88 |
| 1/18/2019 | 250.00 | Filing Costs | 7/1/2018 | 16,352.91 | | | | | 366,273.47 | 6,260.88 |
| 1/18/2019 | 595.00 | Attorney Fee | 7/1/2018 | 16,352.91 | | | | | 366,273.47 | 6,260.88 |
| 1/23/2019 | 46.50 | Recording Costs | 7/1/2018 | 16,352.91 | | | | | 366,273.47 | 6,260.88 |
| 1/25/2019 | 3,376.00 | Escrow Disb | 7/1/2018 | 16,352.91 | | | | | 366,273.47 | 6,260.88 |
| 1/25/2019 | 595.00 | Attorney Fee | 7/1/2018 | 16,352.91 | | | | | 366,273.47 | 6,260.88 |
| 1/28/2019 | 44.00 | Service Costs | 7/1/2018 | 18,169.90 | | | | | 366,273.47 | 6,260.88 |
| 1/28/2019 | | Service Costs | 7/1/2018 | 18,169.90 | | | | | 366,273.47 | 6,260.88 |
| 2/1/2019 | 1,816.99 | Contractual Payment | 7/1/2018 | 18,169.90 | | | | | 366,273.47 | 9,760.88 |
| 2/4/2019 | 235.98 | Escrow Disb | 7/1/2018 | 19,986.89 | | | | 3,500.00 | 366,273.47 | 13,260.88 |
| 2/23/2019 | 75.00 | Property Registration Fee | 7/1/2018 | 19,986.89 | | | | | 366,273.47 | 13,260.88 |
| 2/26/2019 | | Payment | 7/1/2018 | 19,986.89 | | | | 3,500.00 | 366,273.47 | 13,260.88 |
| 3/1/2019 | 1,816.99 | Contractual Payment | 7/1/2018 | 19,986.89 | | | | | 366,273.47 | 13,260.88 |
| 3/22/2019 | 235.98 | Service Costs | 7/1/2018 | 19,986.89 | | | | | 366,273.47 | 13,260.88 |
| 3/22/2019 | 1.56 | Service Costs | 7/1/2018 | 19,986.89 | | | | | 366,273.47 | 13,260.88 |
| 3/22/2019 | 6.25 | Service Costs | 7/1/2018 | 19,986.89 | | | | | 366,273.47 | 13,260.88 |
| 3/22/2019 | 6.25 | Service Costs | 7/1/2018 | 19,986.89 | | | | | 366,273.47 | 13,260.88 |
| 4/1/2019 | 1.56 | Contractual Payment | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 4/24/2019 | 235.98 | Escrow Disb | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/1/2019 | 3,376.00 | Contractual Payment | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/3/2019 | 50.00 | Recording Costs | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/6/2019 | 235.98 | Escrow Disb | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/6/2019 | 6.40 | Service Costs | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/6/2019 | 6.25 | Service Costs | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/6/2019 | 1.30 | Service Costs | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/22/2019 | 100.00 | Filing Costs | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/30/2019 | 20.00 | Property Inspection Fee | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 5/30/2019 | 595.00 | Attorney Fee | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 6/1/2019 | 0.50 | Service Costs | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 6/3/2019 | 0.50 | Service Costs | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 6/3/2019 | 235.98 | Contractual Payment | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| 6/17/2019 | 2,000.00 | Sale Costs | 7/1/2018 | 21,803.88 | | | | | 366,273.47 | 13,260.88 |
| | 350.00 | Appraisal Costs | | | | | | | | |

| Date | | | Description | Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/17/2019 | $ - | $ 20.00 | Property Inspection Fee | 7/1/2018 | $ 21,803.88 | $ - | $ - | $ - | $ 366,273.47 | $ (14,245.95) | $ 5,584.01 | $ 13,260.88 |
| 7/1/2019 | $ 1,816.99 | $ - | Contractual Payment | 7/1/2018 | $ 23,620.87 | $ - | $ - | $ - | $ 366,273.47 | $ (14,245.95) | $ 5,584.01 | $ 13,260.88 |
| 7/5/2019 | $ - | $ 235.98 | Escrow Disb | 7/1/2018 | $ 23,620.87 | $ - | $ - | $ - | $ 366,273.47 | $ (14,481.93) | $ 5,584.01 | $ 13,260.88 |
| 7/11/2019 | $ - | $ 75.00 | Title Costs | 7/1/2018 | $ 23,620.87 | $ - | $ - | $ - | $ 366,273.47 | $ (14,481.93) | $ 5,659.01 | $ 13,260.88 |
| 7/12/2019 | $ - | $ - | Reverse/Reapply | 7/1/2018 | $ 23,620.87 | $ - | $ - | $ - | $ 366,273.47 | $ (14,481.93) | $ 5,659.01 | $ 13,260.88 |
| 7/12/2019 | $ (13,260.88) | $ - | Reverse/Reapply | 7/1/2018 | $ 23,620.87 | $ - | $ - | $ (13,260.88) | $ 366,273.47 | $ (14,481.93) | $ 5,659.01 | $ - |
| 7/17/2019 | $ - | $ 20.00 | Property Inspection Fee | 7/1/2018 | $ 23,620.87 | $ - | $ - | $ - | $ 366,273.47 | $ (14,481.93) | $ 5,679.01 | $ - |
| 8/1/2019 | $ 1,816.99 | $ - | Contractual Payment | 7/1/2018 | $ 25,437.86 | $ - | $ - | $ - | $ 366,273.47 | $ (14,481.93) | $ 5,679.01 | $ - |
| 8/2/2019 | $ - | $ 235.98 | Escrow Disb | 7/1/2019 | $ 25,437.86 | $ - | $ - | $ - | $ 366,273.47 | $ (14,717.91) | $ 5,679.01 | $ - |
| 8/6/2019 | $ - | $ 3,496.07 | Escrow Disb | 7/1/2018 | $ 25,437.86 | $ - | $ - | $ - | $ 366,273.47 | $ (18,213.98) | $ 5,679.01 | $ - |
| 8/17/2019 | $ - | $ 20.00 | Property Inspection Fee | 7/1/2018 | $ 25,437.86 | $ - | $ - | $ - | $ 366,273.47 | $ (18,213.98) | $ 5,699.01 | $ - |
| 8/28/2019 | $ - | $ - | Interest as of BK Filing | 7/1/2018 | $ 25,437.86 | $ - | $ - | $ - | $ 366,273.47 | $ 19,355.23 | $ (18,213.98) | $ 5,699.01 |

LOAN #: ▮▮▮▮
MIN: ▮▮▮▮

## NOTE

FHA Case No. ▮▮▮▮

**November 15, 2017**
**[Date]**

**Cranford,**
**[City]**

**New Jersey**
**[State]**

**1075 Ringwood Avenue, Pompton Lakes, NJ 07442**
**[Property Address]**

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. **$369,352.00**      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **First Alliance Home Mortgage, LLC, a Limited Liability Corporation.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.250 %.**
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **1st**      day of each month beginning on **January 1, 2018.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **December 1, 2047,**      I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  **20 Jackson Drive, 2nd Floor**
                                                    **Cranford , NJ 07016**
or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$1,816.99.**

### 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED
**(A) Late Charge for Overdue Payments**
 If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

**MULTISTATE FIXED RATE NOTE** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3200 1/01**
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.                                                      Page 1 of 2                            FHA3200NOT  0216
                                                                                                                        FHA3200NOT (CLS)
                                                                                                                        11/14/2017 11:54 AM PST

Initials: _VL_ _____

**LOAN #:** ███

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ '(Seal)
**VINCENZO CONDINA**

_____ '(Seal)
**ROSANA CONDINA**

Lender: First Alliance Home Mortgage, LLC
NMLS ID: 5034
Loan Originator: Evelyn J. Ortiz
NMLS ID: 398902

**ROBERT FAUSSETTE**
**NOTARY PUBLIC OF NEW JERSEY**
**Comm. # 50065464**
**My Commission Expires 8/8/2022**

[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)                                                    Initials: ___
Ellie Mae, Inc.                                    Page 2 of 2               FHA3200NOT  0216
                                                                            FHA3200NOT (CLS)
                                                                            11/14/2017 11:54 AM PST

## ALLONGE TO NOTE

LOAN # █████████

LOAN AMOUNT  $369,352.00

PROPERTY ADDRESS  1075 Ringwood Avenue
Pompton Lakes, NJ 07442

ALLONGE TO NOTE DATED  November 15, 2017

IN FAVOR OF  First Alliance Home Mortgage, LLC, a Limited Liability Corporation

AND EXECUTED BY  Vincenzo Condina AND Rosana Condina

PAY TO THE ORDER OF   Ditech Mortgage Corp.

WITHOUT RECOURSE  First Alliance Home Mortgage, LLC, a Limited Liability Corporation

BY
Sam Khalil

TITLE President

Pay to the order of

Without Recourse

Jonathan Nitkiewicz

Authorized Signor

Ditech Financial LLC

formerly known as Green Tree Servicing LLC
as successor by merger to Ditech Mortgage Corp

Document #L444 LFF305
Ellie Mae, Inc.

GN13  0103
GN13 (CLS)
11/14/2017 11:54 AM PST

When recorded, return to:
**First Alliance Home Mortgage, LLC**
**Attn: Final Document Dept.**
**20 Jackson Drive, 2nd Floor**
**Cranford, NJ 07016**

This document was prepared by:
**First Alliance Home Mortgage, LLC**
**20 Jackson Drive, 2nd Floor**
**Cranford, NJ 07016**
**732-582-3338**

_____

Signature of Preparer

LOAN #: ████████            ——————[Space Above This Line For Recording Data]——————

FHA Case No.

# MORTGAGE

MIN: ████████

MERS PHONE #: ████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **November 15, 2017,**        together with all Riders to this document.

**(B) "Borrower"** is  **VINCENZO CONDINA AND ROSANA CONDINA, HUSBAND AND WIFE.**

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is  **First Alliance Home Mortgage, LLC.**

Lender is  **a Limited Liability Corporation,**                        organized and existing under the laws of **New Jersey.**
Lender's address is  **20 Jackson Drive, 2nd Floor, Cranford , NJ 07016**

**(E) "Note"** means the promissory note signed by Borrower and dated **November 15, 2017.**      The Note states that Borrower owes Lender  **THREE HUNDRED SIXTY NINE THOUSAND THREE HUNDRED FIFTY TWO AND NO/100\***
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Dollars (U.S. **$369,352.00**        )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **December 1, 2047.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Planned Unit Development Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3031 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                              Page 1 of 8

Initials: _VC_ _____
NJEFHA15DE   0915
NJEDEED (CLS)
11/14/2017 11:54 AM PST

**LOAN #:** ███████

tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** of **Passaic**

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]:

**See legal description**

which currently has the address of   **1075 Ringwood Avenue, Pompton Lakes,**

[Street] [City]

**New Jersey 07442**           ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or

**NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3031 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 2 of 8

Initials: _V Q_    _R_

NJEFHA15DE  0915
NJEDEED (CLS)
11/14/2017 11:54 AM PST

**LOAN #:** ███████████

prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3031 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                      Page 3 of 8

Initials: VC BU

NJEFHA15DE  0915
NJEDEED (CLS)
11/14/2017 11:54 AM PST

LOAN #: ████████

determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower-does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3031 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 4 of 8

Initials: _RC_ _R._

NJEFHA15DE  0915
NJEDEED (CLS)
11/14/2017 11:54 AM PST

**LOAN #:** <span style="background:black">    </span>

this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3031 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.    Page 5 of 8    Initials: ____
NJEFHA15DE  0915
NJEDEED (CLS)
11/14/2017 11:54 AM PST

LOAN #:

limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3031 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 6 of 8

Initials: _____

NJEFHA15DE  0915
NJEDEEO (CLS)
11/14/2017 11:54 AM PST

LOAN #: ███████

Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property;

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3031 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 7 of 8

Initials: _VC_ _____

NJEFHA15DE  0915
NJEDEED (CLS)
11/14/2017 11:54 AM PST

LOAN #: ▓▓▓▓▓▓▓

(e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.


_____     _11-15-17_(Seal)
VINCENZO CONDINA                              DATE

_____     _11-15-17_ (Seal)
ROSANA CONDINA                               DATE


**State of NEW JERSEY**
**County of PASSAIC, ss**
         Bergen

On _____11-15-17_____, before me, _Robert Faussette_, Notary Public in and for said county, personally appeared VINCENZO CONDINA AND ROSANA CONDINA and stated to my satisfaction, that this person (or if more than one, each person) a) was the maker of the within instrument and, b) executed this instrument as his or her own act.


_____     _11-15-17_
Notary's signature                           DATE

My commission expires _____8-8-22_____


Lender: First Alliance Home Mortgage, LLC
NMLS ID: 5034
Loan Originator: Evelyn J. Ortiz
NMLS ID: 398902

ROBERT FAUSSETTE
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50085464
My Commission Expires 8/8/2022


NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3031 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                 Page 8 of 8

Initials: VC  RC
NJEFHA15DE  0915
NJEDEED (CLS)
11/14/2017 11:54 AM PST

TITLE INSURANCE COMMITMENT
*Issued by Empire Title Agency, LLC*
AGENT FOR Old Republic National Title Insurance Company

## SCHEDULE C
## LEGAL DESCRIPTION

Issuing Office File No.█████

**ALL** that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Pompton Lakes, in the County of Passaic, State of NJ:

**BEING** known and designated as Lot 20 Block 78-D on a certain map entitled "Revised Subdivision Map Pompton Gardens, Borough of Pompton Lakes, Passaic County, NJ" filed. in the Passaic County Register's Office on June 15, 1948 as Map No. 1153.

**BEGINNING** at a point on the Easterly side of Ringwood Avenue where the dividing line between lot 20 and 21 intersects the same as shown map herein after mentioned and running THENCE

(1) North 08 degrees 43 minutes 40 seconds East, 75.00 feet to a point; THENCE

(2) On a curve to the right having a radius of 36.01 feet an arc distance of 41.79 feet to a point of curve in the Southeasterly line of Ringwood Court; THENCE

(3) On a curve to the left having a radius of 361.91 feet and arc distance of 48.19 feet to that point on said Southeasterly side of Ringwood Court where the diving line between lots 19 and 20 joint with the same; THENCE

(4) South 28 degrees 58 minutes 17 seconds East, 164.46 feet to a point; THENCE

(5) North 81 degrees 16 minutes 20 seconds West, 165.00 feet to the point and place of **BEGINNING**.

The above description being drawn in accordance with a survey prepared by BullesEye Surveying, LLC, dated October 24, 2017.

**FOR INFORMATION PURPOSES ONLY:** BEING known as 1075 Ringwood Avenue, Tax Lot 20, Tax Block 7806 on the Official Tax Map of Borough of Pompton Lakes, NJ.

END OF DOCUMENT

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Old Republic National Title Insurance Company . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II— Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

# Assignment of Mortgage

NJ51248FC

MERS MIN#█████████

MERS PHONE#:█████████

PO Box 2026, Flint, MI 48501-2026, 1901 E. Voorhees Street, Suite C, Danville, IL 61834

THE ASSIGNOR

**Mortgage Electronic Registration Systems, Inc., as nominee for First Alliance Home Mortgage, LLC** **Its Successors and Assigns** referred to as the Assignor, for one dollar ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, hereby assigns to: **Ditech Financial LLC** residing or located at:

> **2100 East Elliot Rd.**
> **Bldg. 94 Mail Stop T325**
> **Tempe, AZ 85284**

referred to as the Assignee; a certain Mortgage dated **11/15/2017**, made by **Vincenzo Condina and Rosana Condina, Husband and Wife** referred to as the Mortgagor(s). The property covered by the Mortgage is located in the **Borough of Pompton Lakes** in **Passaic** County, New Jersey. (Block 7806 Lot 20) The Mortgage was recorded on **12/06/2017** in the office of the County Recording Officer of **Passaic** County, New Jersey, in **Book M14803, Page 278** of the book of mortgages. The original amount of the Mortgage was **$369,352.00.**

**To have and to hold** the same unto the Assignee forever, subject only to all the provisions contained in the Mortgage.

In all references in this Assignment to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

(For Recorder's Use Only)

```
DANIELLE IRELAND-IMHOF
       CLERK
   PASSAIC COUNTY
     New Jersey

  INSTRUMENT NUMBER
     2019000922
    RECORDED ON
    Jan 04, 2019
    1:15:52 PM
BOOK:AS638 PAGE:284
    Total Pages: 4

NJ PRESERVATION ACCOUNT $15.00
RECORDING FEES -        $35.00
RECORDER OF DEEDS
EFILING CONVENIENCE FEE  $2.00
TRUST FUND
TOTAL PAID              $52.00
INV: 1302182 USER: ML
```

AOM – 1075 Ringwood Avenue Pompton Lakes, NJ 07442



*PAGE  1*

*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:*

*"DITECH MORTGAGE CORP", A CALIFORNIA CORPORATION,*

*"DT HOLDINGS LLC", A DELAWARE LIMITED LIABILITY COMPANY,*

*WITH AND INTO "GREEN TREE SERVICING LLC" UNDER THE NAME OF "GREEN TREE SERVICING LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE THIRTEENTH DAY OF AUGUST, A.D. 2015, AT 1:35 O'CLOCK P.M.*

*AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE THIRTY-FIRST DAY OF AUGUST, A.D. 2015, AT 12:05 O'CLOCK A.M.*

Jeffrey W. Bullock, Secretary of State

*2458190   8100M*

*151168309*

*AUTHENTICATION: 2641973*

*DATE: 08-13-15*

*You may verify this certificate online
at corp.delaware.gov/authver.shtml*

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 01:35 PM 08/13/2015*
*FILED 01:35 PM 08/13/2015*
*SRV 151168309 - 2458190 FILE*

# STATE OF DELAWARE
# CERTIFICATE OF MERGER

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act, the undersigned hereby executes the following Certificate of Merger:

**FIRST**: The surviving limited liability company is **Green Tree Servicing LLC**, a Delaware limited liability company, and the corporation and limited liability company being merged into this surviving limited liability company are:

> **DT Holdings LLC**, a Delaware limited liability company, and
> **Ditech Mortgage Corp**, a California corporation.

**SECOND:** The Agreement and Plan of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations and limited liability companies pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

**THIRD:** The name of the surviving limited liability company is hereby amended to **Ditech Financial LLC**, a Delaware limited liability company (as such surviving entity, the "Surviving Limited Liability Company").

**FOURTH:** The mergers are to become effective as of 12:05 AM EDT on August 31, 2015.

**FIFTH:** The Agreement and Plan of Merger is on file at 3000 Bayport Drive, Suite 880, Tampa, FL 33607, the principal place of business of the Surviving Limited Liability Company.

**SIXTH:** A copy of the Agreement and Plan of Merger will be furnished by the Surviving Limited Liability Company on request, without cost, to any stockholder or member of the constituent corporations or limited liability companies, as applicable.

[The remainder of page intentionally left blank.]

**IN WITNESS WHEREOF,** said Surviving Limited Liability Company has caused this certificate to be signed by an authorized officer, the 4th day of August, 2015.

**GREEN TREE SERVICING LLC**

By: _____
Name: Wanda Lamb-Lindow
Title: Assistant Secretary

**Safeguard Properties Management,**

7887 Safeguard Circle

Valley View, OH 44125 5742

Phone No: ██████████

Fax No: ██████████

## Property Insp. - Property Inspection Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | Invoice #: ██████████ |
| | Invoice Status: Check Requested |
| 345 St Peter Street | Input By: Stephanie Datko |
| St Paul, MN 55102 | Date Submitted: 7/19/2019 |
| Re: CONDINA VINCENZO | Invoice Date: 7/18/2019 |
| 1075 RINGWOOD AVE | Vendor Ref #: ██████████ |
| POMPTON LAKES, NJ | Vendor Code: |
| 07442 0000 | |
| Loan #: | Payee Code: ██████████ |
| Loan Type: ██████ | Type: ██████████ |
| Inv. ID / Cat. ID: ██████████ | |
| Cost Center: | Order Date 7/5/2019 |
| FHA Case No: ██████ | Order Complete 7/17/2019 |
| GSE Code: | Acquisition Date: |
| GSE REO Rem. Code: | Paid in Full Date: N/A |
| Entity Code: | Foreclosure Removal Date: N/A |
| | MS Status N/A |
| | Relief Requested Date N/A |
| | Protection Begin Date N/A |
| | Protection End Date N/A |
| | HiType 1 |
| | Class Code GN |

Invoice ID: ██████████

Asset Number:

Approver Name: Jennifer Passen

Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 7/19/2019 | | | | 7/29/2019 | 7/29/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Drive By Inspection | | | 07/17/2019 | 1 | $20.00 | $20.00 | $0.00 | $20.00 |

**Note: Inspections**

| | | | |
|---|---|---|---|
| | **$20.00** | **$0.00** | **$20.00** |
| **Total:** | **$20.00** | **$0.00** | **$20.00** |

**Invoice Level Exceptions**

None

**Invoice Level Comment**

Services ordered by servicer

**Safeguard Properties Management,**

7887 Safeguard Circle

Valley View, OH 44125 5742

| Phone No: | ▮▮▮▮▮ |
|---|---|
| Fax No: | ▮▮▮▮▮ |

### Property Insp. - Property Inspection Services - INVOICE

Ditech Financial LLC - MSP

345 St Peter Street
St Paul, MN 55102

Re:  CONDINA VINCENZO
1075 RINGWOOD AVE
POMPTON LAKES, NJ
07442 0000

Loan #:
Loan Type:
Inv. ID / Cat. ID:
Cost Center:
FHA Case No:
GSE Code:
GSE REO Rem. Code:
Entity Code:

| | |
|---|---|
| Invoice #: | ▮▮▮▮▮ |
| Invoice Status: | Check Requested |
| Input By: | Stephanie Datko |
| Date Submitted: | 6/19/2019 |
| Invoice Date: | 6/18/2019 |
| Vendor Ref #: | ▮▮▮▮▮ |
| Vendor Code: | |
| Payee Code: | ▮▮▮▮▮ |
| Type: | |
| Order Date | 6/6/2019 |
| Order Complete | 6/17/2019 |
| Acquisition Date: | |
| Paid in Full Date: | N/A |
| Foreclosure Removal Date: | N/A |
| MS Status | N/A |
| Relief Requested Date | N/A |
| Protection Begin Date | N/A |
| Protection End Date | N/A |
| HiType | 1 |
| Class Code | GN |

Invoice ID:  ▮▮▮▮▮
Asset Number:
Approver Name:  Jennifer Passen
Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 6/19/2019 | | | | 6/25/2019 | 6/25/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Drive By Inspection | | | 06/17/2019 | 1 | $20.00 | $20.00 | $0.00 | $20.00 |

**Note: Inspections**

| | | | |
|---|---|---|---|
| | $20.00 | $0.00 | $20.00 |
| **Total:** | $20.00 | $0.00 | $20.00 |

**Invoice Level Exceptions**

None

**Invoice Level Comment**

Services ordered by servicer

**KML LAW GROUP, P.C.**

701 Market Street

Philadelphia, PA 19106 1532

Phone No: ███████████

Fax No: ███████████

## Foreclosure - Foreclosure Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | Invoice #: ███████ |
| | Invoice Status: Check Requested(Exc) |
| 345 St Peter Street | Input By: Dan Richard |
| St Paul, MN 55102 | Date Submitted: 6/7/2019 |
| Re: CONDINA VINCENZO | Invoice Date: 6/6/2019 |
| 1075 RINGWOOD AVE | Vendor Ref #: ███████ |
| POMPTON LAKES, NJ | Vendor Code: |
| 07442 0000 | |
| Loan #: | Payee Code: ███████ |
| Loan Type: ███████ | Type: |
| Inv. ID / Cat. ID: ███████ | Referral Date: 11/16/2018 |
| Cost Center: | |
| FHA Case No: ███ | Acquisition Date: |
| GSE Code: | Paid in Full Date: N/A |
| GSE REO Rem. Code: | Foreclosure Removal Date: N/A |
| Entity Code: | |
| | MS Status N/A |
| | Relief Requested Date N/A |
| | Protection Begin Date N/A |
| | Protection End Date N/A |
| | HiType 1 |
| | Class Code GN |
| Invoice ID: ███████ | First Legal Action: N/A |
| Asset Number: | Legal Action: 1/18/2019 |
| Approver Name: Beth Orso | |
| Outsourcer: LPS Default Solutions | |

| Submitted Date | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 6/7/2019 | 6/21/2019 | 6/25/2019 | | 6/25/2019 | 6/25/2019 | |

| Fee Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Attorney Fees - Foreclosure Through Judgment | | | 05/29/2019 | 1 | $595.00 | $595.00 | $0.00 | $595.00 |

**Note: Standard Foreclosure Fee/Recoverable 90% allowable for judgment/see attached**
**Service From Date: 5/29/2019          Service To Date: 5/29/2019**
**Review State Rule - Borrower Recoverability**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $595.00 | $0.00 | $595.00 |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Recording Costs - Certificate of Regularity | | | 05/01/2019 | 1 | $50.00 | $50.00 | $0.00 | $50.00 |

**Note: Misc. Abstractors Complaint Review - COR - Judgment (Non-Recoverable)/see attached**
**Service From Date: 5/1/2019          Service To Date: 5/1/2019 12:00:00**

| Service Costs - Statutory Mailings | | | 03/22/2019 | 1 | $1.56 | $1.56 | $0.00 | $1.56 |

**Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details**
**Service From Date: 3/22/2019          Service To Date: 3/22/2019**

| Service Costs - Statutory Mailings | | | 03/22/2019 | 1 | $6.25 | $6.25 | $0.00 | $6.25 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $57.81 | $0.00 | $57.81 |

| | | |
|---|---|---|
| **Execution Date Time:** 06/25/2019 09:16:30 PM | | **Pages: 1/3** |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 3/22/2019** | | | **Service To Date: 3/22/2019** | | | | | |
| Service Costs - Statutory Mailings | | | 03/22/2019 | 1 | $6.25 | $6.25 | $0.00 | $6.25 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 3/22/2019** | | | **Service To Date: 3/22/2019** | | | | | |
| Sale Costs - Sheriff/Commissioner Deposit | | | 06/03/2019 | 1 | $2,000.00 | $2,000.00 | $0.00 | $2,000.00 |
| **Note: Sale Costs  Sheriff/Commissioner Deposit (Recoverable)/see attached** | | | | | | | | |
| **Service From Date: 6/3/2019** | | | **Service To Date: 6/3/2019 12:00:00** | | | | | |
| Filing Costs - Filing Fee Complaint | | | 05/06/2019 | 1 | $100.00 | $100.00 | $0.00 | $100.00 |
| **Note: Filing Costs - Judgment (Recoverable)/see attached** | | | | | | | | |
| **Service From Date: 5/6/2019** | | | **Service To Date: 5/6/2019 12:00:00** | | | | | |
| Service Costs - Statutory Mailings | | | 03/22/2019 | 1 | $1.56 | $1.56 | $0.00 | $1.56 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 3/22/2019** | | | **Service To Date: 3/22/2019** | | | | | |
| Service Costs - Statutory Mailings | | | 05/06/2019 | 1 | $1.30 | $1.30 | $0.00 | $1.30 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 5/6/2019** | | | **Service To Date: 5/6/2019 12:00:00** | | | | | |
| Service Costs - Statutory Mailings | | | 05/06/2019 | 1 | $6.40 | $6.40 | $0.00 | $6.40 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 5/6/2019** | | | **Service To Date: 5/6/2019 12:00:00** | | | | | |
| Service Costs - Statutory Mailings | | | 05/06/2019 | 1 | $6.40 | $6.40 | $0.00 | $6.40 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 5/6/2019** | | | **Service To Date: 5/6/2019 12:00:00** | | | | | |
| Service Costs - Statutory Mailings | | | 05/30/2019 | 1 | $0.50 | $0.50 | $0.00 | $0.50 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 5/30/2019** | | | **Service To Date: 5/30/2019** | | | | | |
| Service Costs - Statutory Mailings | | | 05/30/2019 | 1 | $0.50 | $0.50 | $0.00 | $0.50 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 5/30/2019** | | | **Service To Date: 5/30/2019** | | | | | |
| Service Costs - Statutory Mailings | | | 05/06/2019 | 1 | $1.30 | $1.30 | $0.00 | $1.30 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 5/6/2019** | | | **Service To Date: 5/6/2019 12:00:00** | | | | | |
| | | | | | | $2,124.21 | $0.00 | $2,124.21 |
| **Total:** | | | | | | $2,777.02 | $0.00 | $2,777.02 |

**Invoice Level Exceptions**

Review State Rule - Borrower Recoverability

**Safeguard Properties Management,**

7887 Safeguard Circle

Valley View, OH 44125 5742

Phone No: █████████

Fax No: █████████

## Property Insp. - Property Inspection Services - INVOICE

Ditech Financial LLC - MSP

345 St Peter Street
St Paul, MN 55102
Re:

CONDINA VINCENZO
1075 RINGWOOD AVE
POMPTON LAKES, NJ
07442 0000

Loan #:
Loan Type: ████
Inv. ID / Cat. ID: ███████
Cost Center:
FHA Case No: ████
GSE Code:
GSE REO Rem. Code:
Entity Code:

| | |
|---|---|
| Invoice #: | ███████ |
| Invoice Status: | Check Requested |
| Input By: | Stephanie Datko |
| Date Submitted: | 5/28/2019 |
| Invoice Date: | 5/27/2019 |
| Vendor Ref #: | ████ |
| Vendor Code: | |
| Payee Code: | ████ |
| Type: | ███████ |
| Order Date | 5/9/2019 |
| Order Complete | 5/22/2019 |
| Acquisition Date: | |
| Paid in Full Date: | N/A |
| Foreclosure Removal Date: | N/A |
| MS Status | N/A |
| Relief Requested Date | N/A |
| Protection Begin Date | N/A |
| Protection End Date | N/A |
| HiType | 1 |
| Class Code | GN |

Invoice ID: ████
Asset Number:
Approver Name: Jennifer Passen
Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 5/28/2019 | | | | 6/10/2019 | 6/10/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Drive By Inspection | | | 05/22/2019 | 1 | $20.00 | $20.00 | $0.00 | $20.00 |
| **Note: Inspections** | | | | | | | | |
| | | | | | | $20.00 | $0.00 | $20.00 |
| **Total:** | | | | | | $20.00 | $0.00 | $20.00 |

**Invoice Level Exceptions**

None

**Invoice Level Comment**

Services ordered by servicer

**Safeguard Properties Management,**

7887 Safeguard Circle

Valley View, OH 44125 5742

Phone No: ███████

Fax No: ███████

## Property Insp. - Property Inspection Services - INVOICE

Ditech Financial LLC - MSP

345 St Peter Street
St Paul, MN 55102
Re:
    CONDINA VINCENZO
    1075 RINGWOOD AVE
    POMPTON LAKES, NJ
    07442 0000

Loan #:
Loan Type:
Inv. ID / Cat. ID:
Cost Center:
FHA Case No:
GSE Code:
GSE REO Rem. Code:
Entity Code:

Invoice #: ███████
Invoice Status: Check Requested
Input By: Stephanie Datko
Date Submitted: 3/22/2019
Invoice Date: 3/20/2019
Vendor Ref #: ███████
Vendor Code:

Payee Code: ███████
Type:
Order Date: 3/6/2019
Order Complete: 3/18/2019
Acquisition Date:
Paid in Full Date: N/A
Foreclosure Removal Date: N/A

MS Status: N/A
Relief Requested Date: N/A
Protection Begin Date: N/A
Protection End Date: N/A
HiType: 1
Class Code: GN

Invoice ID: ███████
Asset Number:
Approver Name: Jennifer Passen
Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 3/22/2019 | | | | 4/4/2019 | 4/5/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Drive By Inspection | | | 03/18/2019 | 1 | $20.00 | $20.00 | $0.00 | $20.00 |

   **Note: INSPECTION - NON RECOVERABLE**

| | | | |
|---|---|---|---|
| | **$20.00** | **$0.00** | **$20.00** |
| **Total:** | **$20.00** | **$0.00** | **$20.00** |

**Invoice Level Exceptions**

None

**Invoice Level Comment**

Services ordered by servicer

**ServiceLink Title Company**

PO BOX 511459

Los Angeles, CA 90051 7882

Phone No:

Fax No:

## Foreclosure - Foreclosure Services - INVOICE

| | | |
|---|---|---|
| Ditech Financial LLC - MSP | Invoice #: | |
| | Invoice Status: | Check Requested |
| 345 St Peter Street | Input By: | Janey Horne |
| St Paul, MN 55102 | Date Submitted: | 2/25/2019 |
| Re:  CONDINA VINCENZO | Invoice Date: | 2/23/2019 |
| 1075 RINGWOOD AVE | Vendor Ref #: | |
| POMPTON LAKES, NJ | Vendor Code: | |
| 07442 0000 | | |
| Loan #: | Payee Code: | |
| Loan Type: | Type: | |
| Inv. ID / Cat. ID: | Referral Date | 11/19/2018 |
| Cost Center: | | |
| FHA Case No: | | |
| GSE Code: | Acquisition Date: | |
| GSE REO Rem. Code: | Paid in Full Date: | N/A |
| Entity Code: | Foreclosure Removal Date: | N/A |
| | MS Status | N/A |
| | Relief Requested Date | N/A |
| | Protection Begin Date | N/A |
| | Protection End Date | N/A |
| | HiType | 1 |
| | Class Code | GN |
| Invoice ID: | First Legal Action: | N/A |
| Asset Number: | Legal Action: | 2/22/2019 |
| Approver Name:  MICHELE PERRELLA | | |
| Outsourcer:  LPS Default Solutions | | |

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 2/25/2019 | 3/15/2019 | 3/28/2019 | | 3/28/2019 | 3/28/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Title Costs - Title Update - Foreclosure | | | 02/23/2019 | 1 | $75.00 | $75.00 | $0.00 | $75.00 |

**Note: BRINGDOWN-Updated Title Report**

**Service From Date: 11/19/2018**         **Service To Date: 2/23/2019**

| | | | | |
|---|---|---|---|---|
| | | $75.00 | $0.00 | $75.00 |
| **Total:** | | $75.00 | $0.00 | $75.00 |

**Invoice Level Exceptions**

None

**Invoice Level Comment**

None

**KML LAW GROUP, P.C.**

701 Market Street

Philadelphia, PA 19106 1532

Phone No: ███████

Fax No: ███████

## Foreclosure - Foreclosure Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | Invoice #: ███ |
| | Invoice Status: Check Requested(Exc) |
| 345 St Peter Street | Input By: Dan Richard |
| St Paul, MN 55102 | Date Submitted: 2/8/2019 |
| Re: CONDINA VINCENZO | Invoice Date: 2/6/2019 |
| 1075 RINGWOOD AVE | Vendor Ref #: ███ |
| POMPTON LAKES, NJ | Vendor Code: |
| 07442 0000 | |
| Loan #: | Payee Code: ███ |
| Loan Type: ███ | Type: |
| Inv. ID / Cat. ID: ███ | Referral Date 11/16/2018 |
| Cost Center: | |
| FHA Case No: ███ | Acquisition Date: |
| GSE Code: | Paid in Full Date: N/A |
| GSE REO Rem. Code: | Foreclosure Removal Date: N/A |
| Entity Code: | |
| | MS Status N/A |
| | Relief Requested Date N/A |
| | Protection Begin Date N/A |
| | Protection End Date N/A |
| | HiType 1 |
| | Class Code GN |
| Invoice ID: ███ | First Legal Action: N/A |
| Asset Number: | Legal Action: 1/18/2019 |
| Approver Name: Trisha Baca | |
| Outsourcer: LPS Default Solutions | |

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 2/8/2019 | 3/1/2019 | 3/21/2019 | 3/4/2019 | 3/21/2019 | 3/21/2019 | |

| Fee Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Attorney Fees - Foreclosure Through Service Complete | | | 01/25/2019 | 1 | $595.00 | $595.00 | $0.00 | $595.00 |
| Note: Standard Foreclosure Fee/Recoverable 70% allowable for service/see attached | | | | | | | | |
| Service From Date: 1/25/2019    Service To Date: 1/25/2019 | | | | | | | | |
| Review State Rule - Borrower Recoverability | | | | | | | | |
| Attorney Fees - Preparation of Loan Assignment | | | 12/11/2018 | 1 | $35.00 | $35.00 | $0.00 | $35.00 |
| Note: Non-Recoverable Fees - Preparation of Assignment of Mortgage/see attached | | | | | | | | |
| Service From Date: 12/11/2018    Service To Date: 12/11/2018 | | | | | | | | |
| Review State Rule - Borrower Recoverability, Additional Investor or Business Approval Required | | | | | | | | |
| Attorney Fees - Foreclosure Through Complaint | | | 01/18/2019 | 1 | $595.00 | $595.00 | $0.00 | $595.00 |
| Note: Standard Foreclosure Fee/Recoverable 50% allowable for complaint/see attached | | | | | | | | |
| Service From Date: 1/18/2019    Service To Date: 1/18/2019 | | | | | | | | |
| Review State Rule - Borrower Recoverability | | | | | | | | |
| | | | | | | $1,225.00 | $0.00 | $1,225.00 |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Service Costs - Statutory Mailings | | | 01/22/2019 | 1 | $0.47 | $0.47 | $0.00 | $0.47 |
| | | | | | | $0.47 | $0.00 | $0.47 |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 1/22/2019** | | | **Service To Date: 1/22/2019** | | | | | |
| | | | | | | | | |
| Service Costs - Statutory Mailings | | | 12/04/2018 | 1 | $0.47 | $0.47 | $0.00 | $0.47 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 12/4/2018** | | | **Service To Date: 12/4/2018** | | | | | |
| | | | | | | | | |
| Recording Costs - Fee / Recording | | | 01/23/2019 | 1 | $46.50 | $46.50 | $0.00 | $46.50 |
| **Note: Recording Costs - Lis Pendens (Recoverable)/see attached** | | | | | | | | |
| **Service From Date: 1/23/2019** | | | **Service To Date: 1/23/2019** | | | | | |
| | | | | | | | | |
| Service Costs - Statutory Mailings | | | 12/04/2018 | 1 | $0.47 | $0.47 | $0.00 | $0.47 |
| **Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details** | | | | | | | | |
| **Service From Date: 12/4/2018** | | | **Service To Date: 12/4/2018** | | | | | |
| | | | | | | | | |
| Filing Costs - Filing Fee Complaint | | | 01/18/2019 | 1 | $250.00 | $250.00 | $0.00 | $250.00 |
| **Note: Filing Costs - Complaint (recoverable)/see attached** | | | | | | | | |
| **Service From Date: 1/18/2019** | | | **Service To Date: 1/18/2019** | | | | | |
| | | | | | | | | |
| Recording Costs - Certificate of Regularity | | | 01/10/2019 | 1 | $84.00 | $84.00 | $0.00 | $84.00 |
| **Note: Other Non Recoverable Recording Costs - Certificate of Regularity - Complaint/see attached** | | | | | | | | |
| **Service From Date: 1/10/2019** | | | **Service To Date: 1/10/2019** | | | | | |
| | | | | | | | | |
| Recording Costs - Assignment Recording | | | 01/04/2019 | 1 | $56.50 | $56.50 | $0.00 | $56.50 |
| **Note: Recorder of Deeds - AOM (Non-Recoverable)/see attached** | | | | | | | | |
| **Service From Date: 1/4/2019** | | | **Service To Date: 1/4/2019 12:00:00** | | | | | |
| | | | | | | **$437.94** | **$0.00** | **$437.94** |
| **Total:** | | | | | | **$1,663.41** | **$0.00** | **$1,663.41** |

**Invoice Level Exceptions**

Review State Rule - Borrower Recoverability, Review State Rule - Borrower Recoverability, Review State Rule - Borrower Recoverability, Additional Investor or Business Approval Required

**Invoice Level Comment**

OK

**ServiceLink Title Company**

PO BOX 511459

Los Angeles, CA 90051 7882

Phone No: ██████████

Fax No: ██████████

## Foreclosure - Foreclosure Services - INVOICE

Ditech Financial LLC - MSP

345 St Peter Street
St Paul, MN 55102
Re:     CONDINA VINCENZO
1075 RINGWOOD AVE
POMPTON LAKES, NJ
07442 0000

Loan #:
Loan Type:
Inv. ID / Cat. ID:
Cost Center:
FHA Case No:
GSE Code:
GSE REO Rem. Code:
Entity Code:

| | |
|---|---|
| Invoice #: | ██████ |
| Invoice Status: | Check Requested(Exc) |
| Input By: | Janey Horne |
| Date Submitted: | 11/23/2018 |
| Invoice Date: | 11/22/2018 |
| Vendor Ref #: | ██████ |
| Vendor Code: | |
| Payee Code: | ██████ |
| Type: | |
| Referral Date | 11/19/2018 |
| Acquisition Date: | |
| Paid in Full Date: | N/A |
| Foreclosure Removal Date: | N/A |
| MS Status | N/A |
| Relief Requested Date | N/A |
| Protection Begin Date | N/A |
| Protection End Date | N/A |
| HiType | 1 |
| Class Code | GN |

Invoice ID:   ██████
Asset Number:
Approver Name:   Trisha Baca
Outsourcer:

First Legal Action:   N/A
Legal Action:   11/21/2018

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 11/23/2018 | 11/27/2018 | 11/27/2018 | | 11/27/2018 | 11/27/2018 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Title Costs - Title Search | | | 11/22/2018 | 1 | $290.00 | $290.00 | $0.00 | $290.00 |

Note: PRE-FORECLOSURE REPORT
Service From Date: 11/19/2018     Service To Date: 11/22/2018
Review State Rule - Borrower Recoverability

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $290.00 | $0.00 | $290.00 |
| Total: | | | | | | $290.00 | $0.00 | $290.00 |

**Invoice Level Exceptions**

Review State Rule - Borrower Recoverability

**Invoice Level Comment**

None



Annual Escrow Account
Disclosure Statement

Tempe, AZ 85284 - 0109

**Statement Date:** 08/30/2019
**Your Loan Account Number:** ▓▓▓▓▓

**Questions?**

VINCENZO CONDINA
ROSANA CONDINA
1075 RINGWOOD AVE
POMPTON LAKES NJ 07442-2316

View your detailed, up-to-date escrow transactions
online at **myaccount.ditech.com**

Call Customer Service at **1-800-643-0202**
  Monday-Friday: 8 a.m. to 9 p.m. ET
  Saturday: 8 a.m. to 5 p.m. ET

---

**SECTION 1   WHY AM I RECEIVING THIS STATEMENT?**

We review your escrow account every year to ensure it is properly funded, based on your upcoming taxes and/or insurance premiums.  This statement provides details of any changes in your escrow account and resulting changes to your mortgage payment.

Our review shows your escrow account has no projected shortage or surplus at this time.  You have just enough funds to cover your projected minimum escrow balance.  See Section 4 for details.

**Effective September 01, 2019, your monthly mortgage payment will be $3,283.57.**

---

**SECTION 2   WHY ARE MY PAYMENTS CHANGING?**

Changes to monthly escrow amounts are common. They're often caused by a change in your taxes and/or insurance premiums. So even if you have a projected surplus in your account, your monthly escrow payment could increase. This table shows how your escrow and mortgage payments are changing.

|  | Current Payment | Changes | New Payment |
|---|---|---|---|
| Due Date | 07/01/2018 | | 09/01/2019 |
| Principal and Interest | $1,816.99 | | $1,816.99 |
| Escrow Payment | $1,339.04 | ↑ $127.54 | $1,466.58 |
| **TOTAL** | **$3,156.03** | **↑ $127.54** | **$3,283.57** |

We use anticipated payments from
your escrow account to determine
your monthly escrow payment:

| | | |
|---|---|---|
| Combined Property Insurance | $1,023.00 |
| Combined Taxes | $13,744.14 |
| Mortgage Insurance | $2,831.76 |
| **TOTAL OUTGOING PAYMENTS** | $17,598.90 | ÷ 12 months = **$1,466.58 Monthly Escrow** |

---

**SECTION 3   WHAT DO I NEED TO DO?**

- If you use Bill Pay or another third party bill payor system and that system is set to make your payments automatically, please contact your bank or vendor to adjust your mortgage payment amount due September, 01, 2019.

| SECTION 4 | HOW IS MY ESCROW SHORTAGE OR SURPLUS CALCULATED? |

Every year, we analyze what you'll need to pay in taxes and/or insurance premiums. Based on these projections, we calculate the amount you'll likely need in your escrow account to pay these bills when they come due. To determine if you have enough funds in your escrow account, we use the formula below. The pre-petition deficiency and shortage is the amount claimed on the bankruptcy proof of claim minus any funds paid. This amount is also considered when identifying any escrow shortage or surplus.

|  |  |  |
|---|---|---|
| Lowest Projected Balance | $1,391.42 | (in gray below) |
| - Minimum Escrow Balance | $2,461.20 | (in gray below) |
| + Pre-Petition Deficiency and Shortage | $1,069.78 | |
| **Shortage Amount** | **$0.00** | |

Your escrow account has a minimum balance, as allowed by federal laws, state laws, or your mortgage contract. Your minimum balance includes up to two months of escrow payments to cover increases to your property taxes and/or homeowners insurance. Your minimum escrow balance is $2,461.20.

This table shows expected payments in and out of your account over the next 12 months:

| Date | What We Expect You to Pay to Escrow | What We Expect to Pay Out | Payment Description | Expected Balance | Balance Needed in Your Account |
|---|---|---|---|---|---|
| Beginning Balance | | | | $3,133.49 | $4,203.27 |
| 09/19 | $1,466.58 | $235.98 | RBP | $4,364.09 | $5,433.87 |
| 10/19 | $1,466.58 | $235.98 | RBP | $5,594.69 | $6,664.47 |
| 10/19 | | $3,496.07 | CITY/TOWN PA | $2,098.62 | $3,168.40 |
| 11/19 | $1,466.58 | $235.98 | RBP | $3,329.22 | $4,399.00 |
| 11/19 | | $1,023.00 | HAZARD INS | $2,306.22 | $3,376.00 |
| 12/19 | $1,466.58 | $235.98 | RBP | $3,536.82 | $4,606.60 |
| 01/20 | $1,466.58 | $235.98 | RBP | $4,767.42 | $5,837.20 |
| 01/20 | | $3,376.00 | CITY/TOWN PA | $1,391.42 | $2,461.20 |
| 02/20 | $1,466.58 | $235.98 | RBP | $2,622.02 | $3,691.80 |
| 03/20 | $1,466.58 | $235.98 | RBP | $3,852.62 | $4,922.40 |
| 04/20 | $1,466.58 | $235.98 | RBP | $5,083.22 | $6,153.00 |
| 04/20 | | $3,376.00 | CITY/TOWN PA | $1,707.22 | $2,777.00 |
| 05/20 | $1,466.58 | $235.98 | RBP | $2,937.82 | $4,007.60 |
| 06/20 | $1,466.58 | $235.98 | RBP | $4,168.42 | $5,238.20 |
| 07/20 | $1,466.58 | $235.98 | RBP | $5,399.02 | $6,468.80 |
| 07/20 | | $3,496.07 | CITY/TOWN PA | $1,902.95 | $2,972.73 |
| 08/20 | $1,466.58 | $235.98 | RBP | $3,133.55 | $4,203.33 |
| Ending Balance | | | | $3,133.55 | $4,203.33 |
| **TOTAL** | **$17,598.96** | **$17,598.90** | | | |

| SECTION 5 | WHAT HAPPENED SINCE MY LAST ESCROW REVIEW? |

In this table, you can see payments you made into your escrow account and outgoing payments we made from your escrow account. If we projected to pay out a significantly different amount, you'll see the difference noted in gray. These differences may impact whether you have enough funds in your escrow account.

Note that the items noted with an "E" in the table below show future payments that are expected to be made into the escrow account, and/or amounts we anticipate will be paid out for tax and/or insurance premiums.

| Date | What You Actually Paid to Escrow | What We Expected You to Pay to Escrow | What We Actually Paid Out | What We Expected to Pay Out | Payment Description | Actual Balance | Expected Balance from Last Review |
|---|---|---|---|---|---|---|---|
| Beginning Balance | | | | | | -$5,837.93 | $3,030.00 |
| 12/18 | | $1,448.86 | $240.14 | $240.14 | RBP | -$6,078.07 | $4,238.72 |
| 01/19 | | $1,448.86 | | $240.14 | RBP | -$6,078.07 | $5,447.44 |
| 01/19 | | | $3,376.00 | $3,030.00 | CITY/TOWN PA | -$9,454.07 | $2,417.44 |
| 01/19 | | | $235.98 | | RBP | -$9,690.05 | $2,417.44 |
| 02/19 | | $1,448.86 | | $240.14 | RBP | -$9,690.05 | $3,626.16 |
| 02/19 | | | $235.98 | | RBP | -$9,926.03 | $3,626.16 |
| 03/19 | | $1,448.86 | | $240.14 | RBP | -$9,926.03 | $4,834.88 |
| 03/19 | | | $235.98 | | RBP | -$10,162.01 | $4,834.88 |
| 04/19 | | $1,448.86 | | $240.14 | RBP | -$10,162.01 | $6,043.60 |
| 04/19 | | | $3,376.00 | $3,030.00 | CITY/TOWN PA | -$13,538.01 | $3,013.60 |
| 04/19 | | | $235.98 | | RBP | -$13,773.99 | $3,013.60 |
| 05/19 | | $1,448.86 | | $240.14 | RBP | -$13,773.99 | $4,222.32 |
| 05/19 | | | $235.98 | | RBP | -$14,009.97 | $4,222.32 |
| 06/19 | | $1,448.86 | | $240.14 | RBP | -$14,009.97 | $5,431.04 |
| 06/19 | | | $235.98 | | RBP | -$14,245.95 | $5,431.04 |
| 07/19 | | $1,448.86 | | $240.14 | RBP | -$14,245.95 | $6,639.76 |
| 07/19 | | | $3,722.33 | | CITY/TOWN PA | -$14,245.95 | $2,917.43 |
| 07/19 | | | $235.98 | | RBP | -$14,481.93 | $2,917.43 |
| 08/19 | $21,347.47 E | $1,448.86 | E | $240.14 | RBP | $6,865.54 | $4,126.15 |
| 08/19 | | | $235.98 | | RBP | $6,629.56 | $4,126.15 |
| 08/19 | | | $3,496.07 | | CITY/TOWN PA | $3,133.49 | $4,126.15 |
| Ending Balance | | | | | | $3,133.49 | $4,126.15 |
| **TOTAL** | **$21,347.47** | **$13,039.74** | **$12,376.05** | **$11,943.59** | | | |

E = estimated future payment

| SECTION 6 | ADDITIONAL MESSAGES |

To the extent that you currently are protected by the automatic stay or have received a discharge from personal liability under the Bankruptcy Code, this Annual Escrow Account Disclosure Statement is for informational and/or compliance purposes only and is not a demand for payment from you personally or an attempt to impose personal liability. However, we retain the ability to enforce our lien on the property securing our loan, subject to applicable provisions of the Bankruptcy Code and other applicable law.